No. 1,950.

LOUIS ROSE, Petitioner, *v.* JOSE G. ESTUDILLO (Treasurer of the County of San Diego), Respondent.

FUNDING ACT—CONSTRUCTION OF.—An Act of the Legislature, creating a Board of Commissioners for the purpose of examining into the legality or illegality of all claims or demands outstanding against a county, and for the funding of such as they shall consider legal and just; and which further provides that *no such demand or claim shall be a legal claim against the county, unless it is presented to and allowed by such Commissioners,* is, in this last respect, unconstitutional.

WARRANT ISSUED BEFORE THE PASSAGE OF THE ACT.—A warrant issued by the Auditor of a county, and which had been duly presented by the holder to the Treasurer, for payment, and indorsed by him "not paid for the want of funds," prior to the passage of the Act, and the holder having elected not to present his warrant to said Commissioners, and it was therefore never funded, is, nevertheless, a valid claim against the county, and was the duty of the Treasurer of the county to pay the same from the first moneys in the treasury, applicable to such payment.

IDEM.—POWERS OF LEGISLATURE.—IMPAIRING A CONTRACT.—It is not competent for the Legislature to declare such a claim invalid, nor could it authorize a commission to do so. The creditor could not be compelled to accept another and an essentially different mode of payment from that provided by his contract; that is to say, by the laws existing at the time he became a creditor of the county.

IDEM.—REMEDY.—The Act having provided what taxes may be imposed by the county, for county purposes, and designated the purpose to which each fund shall be devoted, no provision being made for that class of indebtedness to which the claim of the holder of the warrant belongs, except the funding provisions contained in the Act, and there being no funds in the treasury of the county applicable to that purpose, at the time he made his demand on the Treasurer, he has no remedy, except to apply to the Legislature, to provide the means of paying his debt.

IDEM.—If there were funds in the treasury of the county, applicable to such payment at the time the demand was made by the holder of the warrant, which were raised under the law as it stood before the passage of the Act, and the warrant was first in the order of outstanding, unfunded debt of the county, which existed prior to the Act in question, he had a right to be paid from these funds, which the Legislature could not deprive him of, without his consent.

THIS case arose upon a petition to the Supreme Court, in the exercise of original jurisdiction, for a writ of mandate, to compel the Treasurer of San Diego County to pay certain warrants issued by the Auditor of said county, which had been duly presented to him for payment, and indorsed "not paid for want of funds," prior to the passage of the Act for funding the unfunded indebtedness of said county.

The other facts are stated in the opinion.

(T.)

*H. P. Barber*, for Petitioner.

The County Treasurer refuses to pay the warrants set forth in the petition, as is believed, on the ground that they have not been passed upon by the Commissioners appointed under the Act of March 18, 1868.   (Laws of 1867–68, p. 178, Section 7.)

A full and complete answer to this is, that so far as warrants issued, audited and presented, before the passage of that Act are concerned, its provisions are wholly unconstitutional, as *impairing the obligation of contracts.*

The petition shows that in 1859 and 1860, the "Board of Supervisors of the County of San Diego *examined, settled and allowed*" the accounts specified therein, and that the County Auditor issued warrants therefor, which were all presented to the Treasurer in 1860, and by him indorsed: "Not paid for the want of funds."

By the Act of 1852 (page 226), the Supervisors of San Diego had the power to "examine, settle and allow all amounts legally chargeable against the county." So, also, by the General Act, (Hittell's Digest, Art. 6978, Sec. 2.) Being allowed by the Supervisors, it was the duty of the Auditor to draw warrants for them.   (*Id.* Art. 7272.)   On presentation of such warrants, it was the duty of the Treasurer to pay them.   (*Id.* Art. 7192, 7193.)

Thus, then, in the year 1860, our right to receive this money was *perfect.*   The county now attempts to defeat payment of its just indebtedness, by interposing Section 7 of Laws of 1867–'68 (p. 178.)   That section is so clearly unconstitutional, as to the warrants in question, issued and presented eight years before its passage, that a bare reference to the authorities is all we deem necessary.

It was no part of our contract with the county, that after the bills were once regularly allowed, warrants issued and presentation made—when, in fact, our rights were perfect, that we should present these same accounts to a second tribunal for investigation and allowance.

Our legal rights to these sums were perfect, when we had complied with the laws in force at the time of the presenta-

tion of our warrants, and it was not in the power of any Legislature to annex other and different conditions.

Well may we answer, "*In hoe foedere non veni.*"

The question has been exhaustively argued by this Court in *McCauley* v. *Brooks* (16 Cal. 12.) (See, also, *Robinson* v. *Magee*, 9 Cal. 81; *People* v. *Platt*, 17 Johns. 195.)

*C. A. Johnson* and *Jo Hamilton*, Attorney General, for Respondent.

*First*—The County Treasurer (the respondent), refuses to pay the warrants set forth in the petition, because the same constitute a fractional part of the floating or unfunded indebtedness of the County of San Diego; and the County Treasurer is forbidden by law from paying the same, or any part of said floating or unfunded indebtedness, except in conformity with the provisions of the Act of March 18, 1868, entitled an Act for the government of the County of San Diego. (Statutes 1867–'68, pp. 176 to 181.)

*Second*—The warrants set forth in the petition are county warrants (public indebtedness), and, in contemplation of law, stand on the same footing as if they were national or State indebtedness—the holder of such indebtedness is at the will and mercy of the sovereign power, as to time, manner and amount of payment; and the creditor can get his pay in such manner only as the sovereign power may provide for that purpose. The creditor takes with notice of all those infirmities, and if he does not get his money at the time it is promised, it does not lay in his mouth to complain.

*Third*—We insist that public indebtedness is not *ex contractu*, or within the purview or meaning of Article I, Section 10, Constitution of the United States, or of Article I, Section 16, of the Constitution of this State, and that the Act for the government of the County of San Diego, above cited, is not a law impairing the obligation of contracts, within the meaning of those sections.

*Fourth*—The authorities cited by petitioner's counsel, we maintain, are not in point. In the leading case cited by him (*McCauley* v. *Brooks*, 16 Cal. 12), the State had, in part at least, divested herself of her sovereign power; that is to say,

the State, in a special manner, by appropriate legislation, empowered her agents to bind her by contract (private contract, we may say). Thus, the State, like an individual, became a party to a contract; she thereby adopted the law of contracts, and incurred all the liabilities consequent to a breach of her contract, the same as an individual in that case.

Finally, we insist that the law enunciated by this Court in *Sharp* v. *Contra Costa County* (34 Cal. 284), when applied to this case, must dispose of it in favor of the respondent, Estudillo.

TEMPLE, J., delivered the opinion of the Court:

On the 18th of March, A. D. 1868, an Act was passed by the Legislature to provide for the government of the County of San Diego. Among other things, that Act provides for the funding of the funded indebtedness of the county, and creates a Board of Commissioners, whose duty it is to "carefully examine into the legality or illegality of all the unfunded indebtedness, accounts, warrants, vouchers, claims, or demands of every nature or character whatever, which now are or may remain outstanding against said county on the first day of April, 1868; and they shall audit and allow, or reject in whole or in part, any or all of said unfunded indebtedness, accounts, warrants," etc., "according, as in their judgment, the same shall appear to be a legal and just claim against the county, or otherwise," etc. "No such certificate of indebtedness, warrant, claim, demand, or other charge, shall be a legal and valid claim against said county, or be paid, until passed upon, audited and allowed by said Board." The Act then provides, that if the warrants are audited by them, they shall allow interest; provided, if only a portion due on the warrant is allowed by them, then interest shall be reckoned on that portion only.

The petitioner is the holder of certain warrants, issued by the Auditor of the county, and which had been duly presented to the Treasurer for payment, and indorsed "not paid for

want of funds," prior to the passage of the Act. His claim, therefore, was a part of the recognized indebtedness of the county, authenticated and allowed as provided by law, and it was the duty of the Treasurer of the county to pay the warrants from the first moneys in the treasury properly applicable thereto. He had done all the existing laws required him to do.

It was not competent for the Legislature to pass an Act which would declare these claims invalid, nor could it authorize a commission to do so. Nor could the Legislature impose other and new conditions upon the creditors. (*McCauley* v. *Brooks,* 16 Cal. 11; *People* v. *Bond,* 10 Cal. 566.)

The warrants of the petitioner, therefore, if he had chosen to have them funded, would have been conclusive evidence that his claim was legal and just within the meaning of the Act. The petitioner elected, however, not to present his warrants, and they have never been funded. By the terms of the Act, unless so presented and allowed by the Commissioners, they are not valid and legal claims against the county, and cannot be paid.

This provision of the Act is repugnant to the Constitution. The creditor could not be compelled to accept another and an essentially different mode of payment from that provided by his contract—that is to say, by the laws existing at the time he became a creditor of the county. The authorities cited (*McCauley* v. *Brooks, supra*) clearly establish that this restriction in the Constitution applies to contracts, to which the State is a party, as fully as to contracts between individuals. It is true, the State, by virtue of its sovereign power, may refuse to permit itself to be sued, or may omit to raise a revenue to pay its just debts, but it cannot annul contracts it has entered into, or deprive individuals of vested rights acquired under them. But if the revenue has been provided by law, and the money produced by it for the purpose of paying the debts the State has contracted to pay, the creditor, who by law is entitled to the money, has an interest in the fund, of which the Legislature cannot deprive him. (*McCauley* v. *Brooks, supra; Robinson* v. *Magee,* 9 Cal. 81.)

In the ninth section of the Act referred to, the Legislature

has provided what taxes may be imposed by the county for county purposes, and has distributed them to the various funds, and designated the purpose for which each fund shall be devoted. No provision is made for that class of indebtedness to which the claim of the petitioner belongs, except the funding provisions already referred to. No moneys are provided from which it can properly be paid. Unless there are funds in the treasury, therefore, which were raised under the previous law, and by that law were designated to pay his claim, petitioner has no remedy except to apply to the Legislature to provide the means of paying his debt. The respondent is but a ministerial officer, and can only pay out the moneys in his charge as directed by law; and if he has no funds which the law authorizes to be applied to the petitioner's debt, that fact will be a sufficient answer to this application. The petitioner cannot be compelled to accept the bonds provided by the Funding Act; but, on the other hand, the county cannot raise the money for his payment unless authorized to do so by law; and the power of taxation the State may authorize or not as it pleases. The revenues raised for other purposes cannot be applied by respondent to pay his debt. (*Hunsaker* v. *Borden*, 5 Cal. 288; *Emeric* v. *Gilman*, 10 Cal. 404; *Sharp* v. *Contra Costa County*, 34 Cal. 284.)

By stipulation it is admitted that there was in the treasury of San Diego County, at the time the demand was made by the petitioner, the sum of $217 73, which was raised under the law as it stood before the passage of the above Act. It is shown, that petitioner's warrants are first in the order of payment of the outstanding, unfunded debt of that county, which existed prior to the Act in question. As we have seen, the petitioner had a right to be paid from these funds, of which the Legislature could not deprive him without his consent.

Is is, therefore, ordered that a peremptory mandate issue, requiring the respondent to pay petitioner from the treasury of San Diego County, the said sum of $217 73, to be credited upon the warrants held by him in their proper order.

Wallace, J., did not participate in the decision of this cause.