[No. 3,129.]

## THE PEOPLE OF THE STATE OF CALIFORNIA *v.* E. W. MORSE, AND CERTAIN REAL ESTATE AND IMPROVEMENTS.

INTEREST TAX FUND OF SAN DIEGO COUNTY.—The "Interest Tax Fund" mentioned in the Act of March 18th, 1868, " to provide for the government of the County of San Diego," was intended to take the place of the "interest tax," required to be levied by the Act of May 4th, 1855, "to fund the debt of said county and provide for the payment of the same," and was also intended to pay the interest on the old bonds of the county in case the holders should not choose to accept the terms of payment offered by the said Act of 1868.

COUNTY INDEBTEDNESS.—The Legislature cannot *require* the creditors of a county to surrender their evidences of indebtedness, and accept new ones different·in terms from the old, but it may refuse to provide funds to pay any portion of the old indebtedness, unless the creditors will accept new evidences in place of the old, and for a less sum.

IDEM.—There is no constitutional objection to a law which provides a county fund, out of which the holders of county indebtedness can obtain fifty per cent of the nominal value of their demands, whenever they may choose to accept of that sum.

DUTY OF ASSESSORS.—An Assessor may assess and place a valuation on a block in a city, as a whole, when one man owns it, without placing a separate valuation on the several lots into which it is divided.

APPEAL from the District Court of the Seventeenth Judicial District, San Diego County.

The plaintiff appealed.

The other facts are stated in the opinion.

*John L. Love, Attorney General,* and *W. McNealy, District Attorney of San Diego County,* for Appellant.

Statutes must be construed, if possible, so as to give effect to each of their provisions, and even where an unconstitutional provision is in the nature of a condition to the main purpose of the law, its invalidity will not necessarily. invalidate the whole law, if the remaining provisions are sufficient to effect that. main purpose. (*Robinson* v. *Bidwell,* 22 Cal.

394; *French* v. *Teschemaker*, 24 Cal. 539.) Stripping the Act in question of that part which declares that none of the unfunded indebtedness shall be a legal and valid claim against the county, unless allowed by the Board of Commissioners created by the Act, and which attempts to force the holders of this indebtedness to submit it to the Board, which has been held to be unconstitutional in the case of *Rose* v. *Estudillo*, 39 Cal., and giving such a construction to the balance of the Act in order, if possible, to give effect to all its other provisions. The Act would then provide that this Board should examine into all such claims as should be voluntarily submitted to them by parties who desired to avail themselves of the Act, and to allow such as they found to be just, and to draw warrants therefor, which are to be payable out of the Floating Debt Redemption Fund in question.

After these claims had been so funded they became, according to the decision in *Rose* v. *Estudillo*, 39 Cal. 270, conclusive evidence of being just and legal within the meaning of the Act, and could certainly be paid according to its terms.

This in itself is merely a matter of legislative policy, and is certainly not subject to review by the Courts. While that portion of the Act which attempts to force the creditors to accept these terms is unconstitutional, still, when it is left optional with them to accept or not, it is no longer a law impairing the obligation of contracts.

*Levi Chase*, for Respondents.

The object of the law having ceased to exist, the law must cease to operate. The Legislature cannot declare the legal debts of a county invalid or authorize a commission to do so. The object of the law was to compel the holders of scrip and other evidences of county indebtedness to deliver them up and take therefor what a Board of Commis-

sioners might determine on. The sections containing such provisions are so blended with the others that they cannot be separated, and must all stand or fall together. (*French* v. *Teschemaker*, 24 Cal. 546; *Lathrop* v. *Mills*, 19 Cal. 529.)

The assessment of an entire block was illegal. (Revenue Act of 1861, Sec. 20; Blackwell on Tax Titles, 146–148; *Terrill* v. *Groves*, 18 Cal. 151; *People* v. *S. F. Savings Union*, 31 Cal. 137; *Levitsky* v. *Johnson*, 35 Cal. 41; *People* v. *Pearis*, 37 Cal. 262.)

By the Court, BELCHER, J.:

This is an action for the collection of delinquent taxes for the year 1871.

By the Act of the 18th of March, 1868, to provide for the government of the County of San Diego, the Board of Supervisors was required on the first Monday of April in each year to levy an annual tax of two dollars on every one hundred dollars valuation of real and personal property within the county, "which shall be collected in the manner prescribed by law, and when paid into the County Treasury shall be distributed as follows: * * * Seventeen and one half per cent into an Interest Tax Fund to be used in the payment of the interest on the funded debt of the county; * * * seventeen and one half per cent into a Floating Debt Redemption Fund, to be used in the payment of the unfunded indebtedness of the county outstanding on the 1st day of April, A. D. 1868; and twelve and one half per cent into a Funded Debt Redemption Fund, which shall be used for the redemption of the funded debt of the county in the manner in this Act provided."

By the same Act a Board of Commissioners was appointed whose duty it was to carefully examine into the legality or illegality of all the unfunded indebtedness of the county

which might remain outstanding on the 1st day of April, 1868, and to allow or reject, in whole or in part, any or all of such indebtedness, as might appear in the judgment of the Board a legal and just claim against the county or otherwise. Upon the allowance of any such indebtedness the Board was directed to issue to the rightful owner and holder thereof a warrant for the amount found to be a legal and just claim against the county, which was made payable without interest, in the manner, and out of the Floating Debt Redemption Fund, provided for in the Act.

It was also provided that whenever the Floating Debt Redemption Fund should contain the sum of two hundred dollars or more, and whenever the Funded Debt Redemption Fund should contain the sum of five hundred dollars or more, the County Treasurer should give notice that he would at a time named receive sealed bids for the surrender of warrants drawn by the Board of Commissioners, and to be paid out of the first named Fund, and of county bonds which were to be paid out of the last named Fund; that at the time named he should, in public and in the presence of the President of the Board of Supervisors, open the proposals and accept the lowest bid or bids for the surrender of such warrants or bonds, provided that no bid for the surrender of warrants should be accepted for more than thirty-five cents upon the dollar, and no bid for the surrender of bonds should be accepted for more than fifty cents upon the dollar of the face value thereof, exclusive of interest.

It was provided that the Treasurer should pay out no moneys placed in these Funds except in the manner and for the purposes named in the Act. At the trial in the Court below it was admitted that a county tax of two dollars upon every one hundred dollars valuation of real and personal property within the County of San Diego was levied by the

Board of Supervisors of said county on the first Monday of April, 1870, pursuant to the requirements of the Act before referred to; that all the indebtedness of said county of every nature and kind which was outstanding on the first day of April, and which had been surrendered to the Board of Commissioners created by the above named Act, for the action of said Board, had been acted upon by it, warrants drawn and the same fully paid, prior to the levy of said county tax in controversy in this action; and that there was in each of the Funds designated in said Act as " Interest Tax Fund," "Floating Debt Redemption Fund," and "Funded Debt Redemption Fund," a large sum of money; that there was still outstanding and unpaid a large amount of the indebtedness of said county, both funded and unfunded, which was outstanding on the 1st day of April, 1868, but that the same was held by parties who refused to accept the terms and conditions of payment provided in the said Act.

In *Rose* v. *Estudillo*, 39 Cal. 270, the constitutionality of this Act was called in question, in so far as it required warrants drawn by the Auditor of the county, and which had been duly presented to the Treasurer for payment, and indorsed "not paid for want of funds," to be presented and passed upon by the Board of Commissioners appointed for that purpose by the Act. It was held that the claim of the petitioner in that case, who held certain warrants of the kind named, was a part of the recognized indebtedness of the county, authenticated and allowed as provided by law, and that it was not competent for the Legislature to pass an Act which would declare such claims invalid, nor could it authorize a commission to do so; that the creditor could not be compelled to accept another and essentially different mode of payment from that provided by his contract—that is to say, by the laws existing at the time he became a creditor of the county. But it was added that as no moneys were provided for the payment of that class of indebtedness to

which the claim of the petitioner belonged, except what was called the "funding provisions" of the Act, the petitioner was without remedy except to apply to the Legislature to provide the means of paying his debt, unless there were funds in the treasury, which were raised under the provisions of the old law, and by that law were designated to pay his claim.

At the trial in the Court below, it was insisted by the defendant—and his views were adopted by the Court—that so much of the taxes levied against his property in 1870 as were to go into the three Funds named, were illegally levied and could not be collected. This was placed upon two grounds: First—It was said that the object of the levy of the tax for said Funds had ceased to exist prior to the levy, because all of the indebtedness of the county which had been acted upon by the Board of Commissioners and allowed, had been fully paid, leaving a large amount of money in each of the Funds, and because the other creditors of the county refused to accept the terms and conditions of payment provided for in the Act. Second—That so much of the said Act as requires the Supervisors of said county to levy the tax for the several Funds aforesaid is unconstitutional and void.

We cannot accept these views as sound. The Interest Tax Fund is provided for the purpose of paying the interest on the outstanding bonds of the county. It is made to take the place of the "interest tax" required to be levied by the Act of May 4th, 1855, to fund the debt of the County of San Diego and provide for the payment of the same. It was evidently provided by the Legislature to pay the interest on the bonds of the county in case the holders should not choose to accept the terms of payment offered them by the Act of 1868; for if they accept those terms, both principal and interest are made payable out of the Funded Debt Redemption Fund.

We do not see how it can be said that the occasion for the Floating Debt Redemption Fund has ceased to exist, or that the law providing for it is unconstitutional. It is true the Legislature cannot require the creditors of the county to accept the terms of payment proposed, but it may refuse, as it has refused, to provide funds to pay them in any other way. It might even refuse to provide funds to pay any portion of the indebtedness. This is well settled by the decisions of this Court, and is so declared in *Rose* v. *Estudillo.* This being so, it is not for the Courts to say that the creditors of the county will never accept a portion of the money due them instead of the whole, or that a law providing means to pay a portion only of their claims is for that reason unconstitutional.

The Funded Debt Redemption Fund was provided for the payment of the outstanding bonds of the county. The Act does not require these bonds to be presented to, or passed upon by the Board of Commissioners. Whenever there are five hundred dollars or more in this Fund, the Treasurer is to call for bids for the surrender of the bonds, and is to accept the lowest bid or bids therefor, provided he can accept none for more than fifty per cent of the face value thereof, exclusive of interest. If these bonds are worth more in the market than the Treasurer is authorized to pay for them, the holders will of course retain them, but if less they will be glad to surrender them on the terms proposed. But whether they be worth more or less, there can be no constitutional objection to the law which provides a Fund out of which the holders can obtain for them fifty per cent of their nominal value whenever they may choose to dispose of them at that rate.

It was also successfully claimed by the defendant, in the Court below, that the assessment of block seventeen and the north half of. block eighteen, in Horton's addition to the City of San Diego, was not made in substantial compliance

with the requirements of the Revenue Act, and did not therefore create any obligation to pay the taxes levied thereon. The alleged illegality of the assessment consisted in the fact that the Assessor placed a valuation upon block seventeen as a whole, and also upon the north half of block eighteen as a whole, and did not place any separate valuation upon the several lots into which those blocks had been divided upon a map of Horton's addition, then on file in the Recorder's office of the county.

Section twenty of the Revenue Act of 1861 requires the Assessor to list or assess the real property situate within the limits of any city or incorporated town, describing by lots or fractions of lots, and also, in a book, to make a map or plan of the various blocks within any incorporated city or town, and to mark thereon the various subdivisions as they are assessed. We are unable to see that the assessment complained of is substantially variant from the requirements of the Act. The intention undoubtedly was to require the Assessors to use the easy and accurate mode of description in common use in cities and incorporated towns. This is usually done by lot, block, and range, having reference to some recorded map or plan of the city or town. But if one man owns and returns a whole block or half block, we see nothing in the language of the statute or in the supposed reasons for its passage, forbidding the Assessor to list and value it as a whole.

Judgment and order reversed and cause remanded for a new trial.

Mr. Justice CROCKETT did not express an opinion.