[No. 1557.]

SAMUEL DAVIS, PETITIONER, v. JOHN SIMPSON, ET AL.,
   AS THE BOARD OF COUNTY COMMISSIONERS OF LINCOLN
   COUNTY, RESPONDENTS.

COUNTY BONDS—LIMITATIONS—WHEN STATUTE MAY NOT BE PLEADED.
   Under act of February 17, 1873 (Stats. 1873, p. 54, sec. 8), which pro-
   vides for the collection of a special tax for the year 1873, and annu-
   ally thereafter, to be applied first to the payment of the interest on
   certain county bonds; and section 10, which creates a sinking fund
   into which shall be paid any surplus, after payment of the interest,
   until such fund shall be sufficient for the payment of the bonds,
   the board of county commissioners, on failure or refusal to collect
   such tax, may be required by *mandamus* to levy and collect it, and
   will not be permitted to plead that the tax was not levied for more
   than the period of limitations, and that the bondholders' right of
   action is barred.

LIMITATIONS—COUNTIES. It is a general rule that, when payment is pro-
   vided out of a particular fund, or in a particular way, the debtor
   cannot plead the statute of limitations without showing that the
   particular fund has been provided or the method pursued.

APPLICATION by Samuel Davis against John Simpson and
others, Board of County Commissioners of Lincoln county,
for a writ of *mandamus*. Writ awarded.

*Freeman & Bates*, for Petitioner:

I.   Bonds draw interest after maturity of last coupons at
same rate as coupons represent. (Simonton on Municipal
Bonds, sec. 101; *Pruyn* v. *Milwaukee*, 18 Wis. 367; *People* v.
*Getzebdaber*, 137 Ill. 234; *Kendall* v. *Porter*, 120 Cal. 106.)
This subject is fully discussed in the majority opinion of the
Supreme Court of California, at page 109 of the opinion in
the case last cited.   We insist, however, that the subject is
placed beyond any doubt by the express provisions of the act
under which the Lincoln county bonds were issued (Stats.
1873, p. 54), which declares that the bonds shall " bear
interest at the rate of ten per cent per annum from the 1st
day of March, 1873; the interest to be paid upon presenta-
tion, at the office of the county treasurer, on the 1st day of
January, 1874, and on the 1st days of January thereafter,
until said bonds are paid and liquidated."   From the fore-
going authorities it is evident that there is no legal difference
between the annual interest maturing before bonds fall due,

and represented by coupons, and the annual interest maturing thereafter, and not so represented.

II.   The terms of the act creating these bonds withdraw them from the operation of the statute of limitations.   The bonds were issued to fund a floating indebtedness then existing.   (Stats. 1873, p. 54.)   The act provided that the annual interest should continue "until said bonds are paid and liquidated."   The bonds themselves were to be due and payable on or before January 1, 1883.   This gave the county the right to pay them at any time, and illustrates the meaning of subsequent sections of the funding act and the intention of the legislature in passing the act in the form it did. Section 8 of the act directs the levy of a special tax of forty-five cents on each one hundred dollars of taxable property and provides that said levy shall be made "for the year 1873 and annually thereafter until the principal and interest of said bonds to be issued shall be fully provided for."   The act further provided that the treasurer should use this tax only to pay the annual interest, and thereupon turn over any balance to a sinking fund which should be used to redeem the bonds by advertising for their surrender in the manner designated in section 12, and accepting the lowest bid.   The whole scope and purpose of the act was to allow Lincoln county to pay whenever it had the money to do so. The act constituted a contract between the county and its creditors which is valid and binding equally on both.   The creditors, on their part, could insist only that the tax of forty-five cents on the hundred dollars be levied and collected annually until they were paid.   The county could pay them as soon as it chose to do so, but, until it had paid principal and interest in full, it could not refrain from levying the annual tax.   As if to emphasize this fact, it was provided in section 18 that any county officer failing to comply with any provision of the act should be guilty of a misdemeanor and should be subject to a fine not exceeding one thousand dollars and removal from office.   The agreed statement of fact on file in this proceeding shows that the county authorities of Lincoln county have, for many years, failed to levy the tax; that petitioner's bonds and all interest maturing thereon since January 1, 1883, are unpaid, and no means

of payment exist unless he can insist that the tax of forty-five cents on the one hundred dollars be levied and collected.

III. The Lincoln county bonds carry with them the pledge of an annual tax set apart into a special fund to be applied solely to their payment and liquidation. The bondholders are entitled to have this tax annually levied until their bonds, and .the annual interest thereon, have been fully paid, and until this fund has proved sufficient for these purposes the county cannot successfully plead the statute of limitations. Its failure to levy the tax for many years can-not create that defense. (*Meyer* v. *Brown*, 65 Cal. 583; *Davis* v. *Lincoln Co.*, 23 Nev. 262; *Luning* v. *Lincoln Co.*, 133 U. S. 529; *Sawyer* v. *Colgan*, 102 Cal. 283; *Freehill* v. *Chamberlain*, 65 Cal. 603.) To pay petitioner's interest, and also to finally redeem his bonds, it is necessary that the tax be levied and collected as prayed for in his petition. The legislative promise was that the tax should annually continue until the principal and interest of the bonds was fully provided for, and petitioner respectfully asks that this court enforce performance of that promise by its writ of mandate.

IV. Petitioner insists that the law is that, where a bonding statute provides and pledges an annual tax for the bonds, the creditor has a right to presume that this will be provided, and for payment through this fund he may safely wait. Nor can the municipality, by neglecting for years to levy the promised annual tax, create the defense of the statute of limitation. None of the cases cited by respondents will be found to be authority against petitioner's contention. An examination of the cases will disclose the fact that no fixed annual tax was pledged to the payment of the demands, except only the cases of *Justices* v. *Orr*, 12 Ga. 137, and *Carroll* v. *Board of Police*, 28 Miss. 38, and in these two cases the opinions express the law to be as contended for by the petitioner in this case.

V. We think the question now presented is not materially different from the question determined in the action between these same parties, decided by this court, and reported in 23 Nev. 262. If this be true, then that decision is *res judicata*, and this court may grant petitioner the relief he desires without further examining the decisions he has

cited, or considering the legal propositions he has advanced.
The act of 1877 (Stats. 1877, p. 46), which this court spe-
cially considered in deciding the former case, does not place
the coupons in any different position as to payment than the
interest subsequently maturing and not having any coupons
to represent it. It is the interest which the county treasurer
is required to pay and to give certificate if payment is impos-
sible. It is this same interest which the petitioner now asks
the county to provide for and which it has refused to do. In
the former case it had made a like refusal, which this court
determined to be wrongful. That it was coupons there in
issue, which the treasurer had registered, was an immaterial
matter, because so far as the coupons themselves were con-
cerned, they were simply representative of the annual inter-
est, and the registration related merely to order of payment,
but did not provide for the annual levy of a special tax of
forty-five cents on the one hundred dollars, and the creation
of a special fund. These necessary things were in the origi-
nal act, and it is these promises which prevent the promissor
from pleading with success the statute of limitations. Neces-
sarily these things were before the court in the former case,
and being there we think that decision is now controlling,
whether they were mentioned by the court or not. (*People* v.
*S. F.*, 27 Cal. 675; *Sacramento Bank* v. *Alcorn*, 121 Cal. 379.)

*F. R. McNamee*, District Attorney, for Respondent:

I. It may be contended by relator that the case at bar is
*res judicata*, owing to a decision of this court rendered on the
17th day of August, 1896, between the same parties (23 Nev.
262, 45 Pac. 982); but we earnestly contend that this case is
*res integra*, for the former proceeding was to compel a levy
to pay detached coupons which had regularly been presented
under the law of 1877 (Stats. 1877, p. 46), and endorsed by
the officers of the county "Not paid for the want of funds."
This, as held in the former decision of this court, created a
new right upon which the relator might rely for payment,
and that the statute would not begin to run until a fund was
provided. Assuming that the court will consider the case at
bar as *res integra*, we respectfully contend that the authori-
ties cited in the former decision do not apply in this case,

for, in *Freehill* v. *Chamberlain*, 65 Cal. 603, the holders of the bonds and coupons against the city of Sacramento were expressly prohibited from suing the city in any case to collect the same by the very act under which the bonds were issued. Consequently the holders in such case were left without any remedy by suit or otherwise, and the court wisely held that the statute in such cases did not run. In the case of *Sawyer* v. *Colgan*, 102 Cal., cited in the former decision, it was a proceeding against the state, and in that case it was held that the statute did not begin to run for the reason that the state could not be sued without its consent. In *Underhill* v. *Sonora*, 17 Cal. 172, there was a new provision by the legislature for the payment of the bonds made with the consent of the defendant, and it was in the nature of a new promise or acknowledgment of the debt. In the case of *Luning* v. *Lincoln County*, 133 U. S. 529, the decision was based entirely on the coupons, as the statute had not as yet run against the original bonds, and the coupons, as in the former case of *Davis* v. *Respondents*, were held not barred, for the reason that they were endorsed under the law of 1877, and that the endorsement was in the nature of a new promise upon which the holder might safely wait for payment.

II. It is admitted in this case that the relator's bonds matured or fell due on the 1st day of January, 1883; that, after the year 1885, the board of county commissioners of Lincoln county, never levied any tax for the payment of any bonds or coupons issued under the law of 1873 until the year 1897, when they were compelled to by a decision of this court, in order to pay the detached coupons of the relator. The coupons for the payment of which the former proceeding was brought are fully paid. For six years subsequent to the year 1885, the time at which the right of action accrued to said relator on said bonds, no action was taken, nor was any action taken to the present year, 1899, to enforce the payment of said bonds or to reduce the same to judgments. The language used in said bonds is that ordinarily used in a promissory note, to wit: " The county of Lincoln promises to pay _____ on or before the 1st day of January, 1883," etc. The bonds became due at that date, and, assuming that the holder was not required to bring any action or proceed-

ing to protect his bonds until the tax levy failed, he certainly was compelled after the year 1885, when the commissioners failed to levy, to bring his action before six years expired, or his right of action would be barred as in the case of a note or other promise in writing to pay. The sum of $600 remained uncalled for in the special fund designated by said act of the legislature for the payment of said bonds and interest from the year 1885 to the month of March, 1894. The statute of limitations began to run on the bonds from their maturity regardless of whether there was money to pay them or not. "When might this action have been instituted, is the question; for from that time the statute must run." (*Amy* v. *City of Dubuque*, 98 U. S. 470; *Golman* v. *Conway Co.*, 10 Fed. Rep. 888; *Baker* v. *Johnson Co.*, 33 Iowa, 151; *Justices* v. *Orr*, 12 Ga. 137; *Carroll* v. *Board of Police*, 28 Miss. 38; *Shirk* v. *Pulaski Co.*, 4 Dillon, 209; *Coler* v. *Bond*, 27 Pac. 624; *Schloss* v. *Board*, 28 Pac. 18; Gen. Stats. 3629.)

By the Court, MASSEY, J.:

It is shown by the petition that pursuant to an act of the legislature approved February 17, 1873, Lincoln county issued and delivered certain bonds to one Harry I. Thornton; that the petitioner was and is the owner and holder of said bonds; that said bonds, nor any part of them, have not been paid, and that the interest thereon from the date of maturity to the 1st day of January, 1899, amounting in the aggregate to $9,620, is also due and unpaid.

It is also shown that the respondents, as the board of county commissioners of said county, have refused and neglected to levy the special tax provided for in said act for the purpose of creating a fund for the payment of said bonds and the interest due thereon.

To the petition the respondents have answered, in effect admitting the material averments therein, but alleging as a defense thereto that since the year 1885, and up to the year 1896, the respondents have not levied or collected any interest tax for the payment due on said bonds under the provisions of the act of 1873; that of the proceeds of the tax levied for interest on the outstanding bonds of said county in 1885 there remained in the interest fund of said county, up to

1894, the sum of $600 applicable to the payment of said bonds and interest; that in March, 1894, the sum of $590 of said sum was paid out upon interest coupons then presented, leaving a balance in said fund of $10; that the cause of action set forth in the petition did not accrue to the holder of said bonds within six years immediately preceding filing the petition, and therefore the statute of limitations applies against the bonds and any interest alleged to be due thereon since the date of maturity.

The facts stipulated are that from 1885 to 1896 the board of county commissioners did not levy or collect a tax provided for in section 8 of the act approved February 17, 1873 (Stats. 1873, p. 54), nor did they levy any tax during said years for said bonded indebtedness, or any part thereof; that of the levy of 1885 the sum of $600 remained in the interest fund until March, 1894, when $590 thereof was paid out upon the coupons of said bonds; that the sum collected from the tax levy of 1896, 1897, and 1898 amounted annually to about the sum of $2,400, and was consumed in paying coupons of said bonds which matured on January 1, 1883, and prior thereto; that no interest maturing on petitioner's bonds subsequent to January 1, 1883, has been paid, and no means exist for their payment, unless the respondents can be required to levy and collect a tax provided for in the act of 1873.

Practically the same question was presented to and decided by this court in the action of *State* v. *Board of Comrs. of Lincoln Co.*, 23 Nev. 262. Counsel for respondent seeks, in his brief, to distinguish that case from the case at bar, claiming that the presentation of the coupons under the act of 1877 created a new contract as to the coupons alone.

We fail to note the distinction made. By section 8 of the act of 1873, it is provided that, in addition to the ordinary taxes for county purposes, there shall be for the year 1873, and annually thereafter until the principal and interest of said bonds shall be fully provided for, levied and collected a special tax, to be called the "interest tax," of forty-five cents on each $100 of taxable property of the county. The fund derived from this tax shall be applied only to 'the payment of the interest accruing upon said bonds, provided that,

should said funds furnish a surplus over and above what may
be required for the payment of said interest, such surplus
shall be turned over and paid into the sinking fund pro-
vided for by section 10 of the same act.

Section 10 created a sinking fund, into which should be
paid any and all surplus of the interest fund aforesaid, and
required that each of the payments should be continued
until the sinking fund should be sufficient for the payment
of the principal and interest of the bonds. It will therefore
be observed that the act authorizing the issuance of the
bonds provides a special fund to which the holder could look
only for the payment of the interest and principal; that
there is no other fund provided for by law out of which pay-
ment of these bonds, or any interest thereon, can be made.

In the language of the court in *State* v. *Board of Comrs. of
Lincoln Co.*, above cited: "As long as the tax was being
levied and collected, there was no occasion for him to bring
an action, and, if he had, it seems very probable it could not
have been maintained, had the proper defense been made.
But when the money was collected he would be entitled to it.
Then his cause of action would be fully ripe, and if not
prosecuted within the statutory period would doubtless be
barred. If not levied or collected, his remedy would be the
one he is now pursuing to compel the officers to do their
duty in the premises."

The board of county commissioners having failed and
refused to provide the fund from which the interest and
principal of these bonds could be paid, and to which the
holder could look alone for payment, the statute of limita-
tions cannot be successfully interposed.

"It is a general rule that, when payment is provided for
out of a particular fund, or in a particular way, the debtor
cannot plead the statute of limitations without showing that
the particular fund has been provided, or the method pur-
sued." (*Sawyer* v. *Colgan*, 102 Cal. 283, 36 Pac. 580; *State*
v. *Board of Comrs. of Lincoln Co.*, 23 Nev. 262.)

The writ will therefore issue.