REIS v. STATE.*

Sac. No. 525; November 28, 1899.

59 Pac. 298.

State—Bonds—Liability—Appropriation.—Act of May 3, 1852 (Stats. 1852, p. 59), provided for the issuance of bonds to pay the expense of military expeditions, such bonds to be payable out of funds appropriated for that purpose by Congress, with the condition that, if such appropriation was insufficient, the bonds would be a valid claim against the state. Congress, in 1845 (10 Stat. 576), appropriated an unapportioned amount intended to pay the military expenses of the state incurred under the act of May 3, 1852, and under prior acts, but such appropriation, while sufficient to cover the expense under the act referred to, was insufficient to pay the entire indebtedness for which it was appropriated, and interest coupons on such bonds held by plaintiff were unpaid. Held, that, the liability of the state being conditioned on the failure of Congress to make an appropriation sufficient to pay the bonds issued under that act, such appropriation being sufficient for that purpose, the state was not liable, though the appropriation was insufficient to cover another and prior indebtedness not mentioned in the act.

APPEAL from Superior Court, Sacramento County.

Action by John O. Reis against the state of California. From a judgment for plaintiff the state appeals. Reversed.

*For subsequent opinion in bank, see 133 Cal. 593, 65 Pac. 1102.

Attorney General Ford for the state; J. D. Thornton and Freeman & Bates for respondent.

VAN DYKE, J.—This action is founded upon interest coupons detached from bonds issued under the act of May 3, 1852 (Stats. 1852, p. 59). The act is entitled "An act authorizing the treasurer of the state to issue bonds for the payment of the expenses of the Mariposa, Second El Dorado, Utah, Los Angeles, Clear Lake, Klamath and Trinity and Monterey expeditions against the Indians." The first section of the act reads as follows: "A sum not exceeding six hundred thousand dollars is hereby appropriated and set apart as an additional war fund, payable in ten years, out of any moneys which may be appropriated by Congress to defray the expenses incurred by the state of California, and interest thereon at the rate of seven per cent per annum, in the suppression of Indian hostilities, or out of the proceeds of the sale of any public lands which may be donated or set aside by Congress for that purpose; and should no such appropriation or donation be made, or if an amount sufficient should not be appropriated or donated within the said ten years, then the bonds authorized to be issued by this act shall be good and valid claims against the state, and shall be paid out of any moneys in the treasury not otherwise appropriated, to pay the expenses of the expeditions mentioned in this act." The bonds issued under this act were in denominations of $100, $250, $500 and $1,000 each, payable in ten years from the date of said act, with interest at the rate of seven per cent per annum, said interest being represented by coupons attached to said bonds, each coupon representing one year's interest. Said coupons were alike in general language, and differed only in number, amount and date of maturity. The coupons sued upon in this case were coupon No. 2, for $70, detached from bond 33, and coupons No. 3, for $70 each, detached from one hundred and eighty-one bonds, and coupons No. 4, for $70 each, detached from the same bonds, and coupons No. 5, for $46.66 each, detached from a like number of bonds; amounting, in the aggregate, to the sum of $39,902.12. The claims were presented to and rejected by the state board of examiners in November, 1894. Findings and judgment went for the plaintiff in the court below, except as to coupons No. 3, detached from bonds numbered 3, 10, 11,

12 and 13. In reference to these the court found in favor of the plea in bar, set up in the answer, of the judgment in the case of Sawyer v. Colgan, 102 Cal. 283, 36 Pac. 580, 834. One of the contentions on the part of the state on the appeal is that the state never became liable on the coupons in question, for the reason that within the time specified in the act in which the bonds were issued Congress did make an appropriation in an amount sufficient to discharge said bonds and accrued interest thereon. It being the duty of the general government to protect the state against Indian hostilities or insurrections, it was understood on all hands that Congress would provide for paying or reimbursing the state for expenses incurred in suppressing said Indian hostilities; and this appears upon the face of the act of the legislature in question. It declares that the bonds are payable out of any moneys which may be appropriated by Congress to defray the expenses incurred by the state in the suppression of said Indian hostilities, but, should no such appropriation be made, or if an amount sufficient should not be appropriated, within the ten years, then the bonds should be good and valid claims against the state. And Congress did make provision for paying such expenses incurred by the state. Section 9 of the act of Congress of August 5, 1854, making appropriations for the support of the army, reads as follows: "And be it further enacted that the Secretary of War be, and he is hereby, authorized and directed to examine into and ascertain the amount of expenses incurred and now actually paid by the state of California in the suppression of Indian hostilities within the said state prior to the first day of January, A. D. 1854, and that the amount of such expenses, when so ascertained, be paid into the treasury of said state: provided, that the sum so paid shall not exceed in amount the sum of $924,-259.65, which amount is hereby appropriated out of any moneys in the treasury not otherwise appropriated'': 10 Stat. 576. At the time this act was introduced in Congress—in January, 1854—the amount therein specified was estimated to cover all the state's liability, both principal and interest, incurred in suppressing Indian hostilities covered by the act of 1852, under which the present action is brought, and the act of 1851. But at the time the act passed, to wit, August 5, 1854, interest had accrued on the bonds issued under said acts of 1851 and 1852, so that the amount appropriated by

Congress fell short of the total amount of principal and interest then due.

Sawyer v. Colgan, supra, was an application for a writ of mandate to compel the controller of the state to issue a warrant upon the state treasury for the amount claimed to be due on a certain bond and on certain coupons. The bond was issued under the act of 1852, the same as the bonds from which the coupons in this case were detached. Some of the coupons in that case were attached to said bond 420. The other coupons were detached from bonds issued under the same act, and the remainder were detached from other bonds issued under the act of February 15, 1851. In reference to the bonds issued under the act of 1852, this court in that case said: "We think it is clear that the liability of the state upon the bonds thus provided for was conditional. They were conditioned upon the failure of Congress to make an appropriation to pay them. Upon the failure of Congress to do so, and not before, were they to become good and valid claims against the state. They were to be paid within ten years; and if Congress within that time made no appropriation to pay them, they were to be paid out of money in the state treasury not otherwise appropriated. Congress did make an appropriation to pay these bonds" (citing the provisions of the act of Congress of August 5, 1854, supra). "But it is said that subsequent acts of Congress imposed conditions which were not in any way binding on the bondholders, and that, in any event, the condition was not complied with until the funds provided by the act of Congress were paid into the state treasury. Neither of these contentions, we think, is sound." "The conditions therein provided were not unreasonable, but were merely such precautionary measures against imposition and fraud as Congress had a right to take. The act of May 3, 1852, contemplated action on the part of Congress, and the bondholders must have known when they accepted the bond that, if Congress made an appropriation to pay it, some safeguard would be provided to prevent fraud or imposition." The court then calls attention to the act of Congress of June 23, 1860, wherein the Secretary of War was authorized to pay out of the unexpended balance of the appropriation on said debt of the state of California, and, answering some of the contentions of the petitioner, says: "It is not sufficient answer to say that this balance was insufficient

to pay all the outstanding bonds and coupons. It is enough to know that petitioner's bonds and coupons would have been paid had they been presented at the proper time. . . . . If any of these obligations are not paid by reason of erroneous rulings on the part of the officers of the department, it is sufficient to say that the result is not due to the fault of the state or any of its officers. The latter have the right to rely upon the acts of Congress. The condition upon which the state was to be liable has not arisen. . . . . The bond on its face provides for payment by the state, 'provided the same be not sooner paid from funds anticipated in said act, to be derived from the government of the United States.' It was understood that Congress might pay the money over to the state, and in that event the bonds would be payable at the office of the state treasurer; but it was not unreasonable to suppose—and such was anticipated, doubtless—that the demands should be made payable by Congress at the national treasury. . . . . Our conclusion is that the state of California never became liable to pay bond 420, or its coupons, or any of the coupons in suit of the bonds issued under the act of 1852." In the same case the court held that the petitioner was entitled to the writ as to the coupons detached from the bonds issued under the act of 1851, on the ground of the difference between the two acts. Sawyer v. Colgan was heard in bank, and thoroughly discussed, and the conclusion therein arrived at is conclusive of this case. If, as there decided, "the state of California never became liable to pay bond 420, or its coupons, or any of the coupons in suit of the bonds issued under the act of 1852," it is too clear for argument that the state never became liable for any of the coupons sued on in this action. The coupons involved in that action were of the series No. 3, falling due January 1, 1855. Only one coupon of the series No. 2, for $70, is embraced in this suit. That series fell due January 1, 1854, and were embraced in the estimated expenses covered by the act of Congress. The series of coupons No. 3 never ripened, the act of Congress having been passed when they had only run seven months of the twelve. However, the amount appropriated by Congress was more than sufficient to cover all the bonds matured or partly matured, together with their coupons; and whether, in addition thereto, it was insufficient to provide for other and prior indebtedness not mentioned in the act of 1852,

makes no difference. By the act of 1852 it was expressly provided that the state would only be liable in case Congress failed to appropriate an amount sufficient to pay that indebtedness, and that was done. As said in Sawyer v. Colgan, these ''coupons would have been 'paid had they been presented at the proper time,'' and that they have not been paid ''is not due to the fault of the state or any of its officers.'' The judgment and order denying a new trial are reversed.

We concur: Garoutte, J.; Harrison, J.