## GEORGE F. SHARP *v.* THE COUNTY OF CONTRA COSTA.

LAW OF CONTRACTS—TO WHOM APPLICABLE.—The law of private contracts is not applicable where the State or county government is a party, in respect to the mode or measure of enforcement.

COUNTY AND STATE GOVERNMENTS—REMEDIES AGAINST.—The county government is a part of the State government, which is sovereign. The State govern-

ment, neither in its general nor local capacity, can be sued by her creditors or made amenable to judicial process, except by her own consent. Her creditors must rely solely upon her good faith as to the time, mode, and measure of payment.

IDEM.—Where, subsequent to the accruing of G.'s claim against Contra Costa County, the Legislative Act was passed authorizing suits to be instituted against counties on claims rejected by the county governments : *held*, that a judgment under that Act only had the effect of converting a disputed into an audited claim against a county, and the State, by reason of her sovereignty, still held control of the question of payment as to all its incidents of time, mode, and measure.

CONTRA COSTA FUNDING ACT—VALIDITY OF.—The Act of 1855, (Stats. 1855, p. 9,) providing for funding the debts of Contra Costa County, was in the exercise of legitimate and unquestionable power on the part of the Legislature, and thereby the State government left all claimants for whom provision was therein made, without any further claim for payment, except in the particular mode, measure, and time therein provided.

IDEM—OBLIGATION OF THE STATE.—Under said Act, all claimants whose claims were embraced in its provisions were bound to fund, or forego all further claim founded upon any supposed legal or moral obligation to pay, resting upon the State. Thereafter, the generosity only, and not the good faith of the State, could be invoked by such claimants as failed to fund their claims.

CONTRA COSTA COUNTY—ACT OF MARCH 14th, 1860, A *nudum pactum.*—The Legislative Act of March 14th, 1860, (Stats. 1860, p. 94,) providing for the levy and collection of a special tax to pay plaintiff's demand, was in all respects *ex gratia*, and, as an offer of payment on the part of the State, was a *nudum pactum.*

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

This was an action, commenced January 16th, 1865, on a judgment for eighty-five thousand dollars, with interest thereon at the rate of five per cent per month from the date of its rendition, July 18th, 1860. The cause was tried before the Court without a jury, on an agreed statement of facts. The following are substantially the facts involved :

In 1852, the Board of Supervisors of Contra Costa County agreed with one Gilman, in consideration that he should build a bridge across San Antonio Creek, to pay him therefor seven thousand four hundred dollars ; and, in the event of nonpayment, a penalty of five per cent a month on the principal sum was stipulated should be paid and derived as interest. The bridge was built ; the contractor did not get his pay—only a warrant on the County Treasury was issued to him—there were no funds to pay with ; and, after 1854,

when the law was passed permitting counties to be sued, he brought suit and obtained, on the 22d of March, 1856, a judgment against the county for twenty thousand four hundred and twenty-seven dollars, that amount being the seven thousand four hundred dollars and interest at five per cent a month to that date. Soon after, Gilman assigned the judgment so obtained to plaintiff; and the latter, previous to the month of March, 1860, caused divers executions to be issued on said judgment, and levied on the property of defendant, which executions were severally quashed and said levies discharged by the District Court in which said judgment had been rendered, and said judgment remained wholly unsatisfied.

Afterwards, on the 14th of March, 1860, the Legislature passed an Act providing for the payment of the judgment for twenty thousand four hundred and twenty-seven dollars and interest thereon, from the date of its rendition, at the rate of ten per cent per annum, by authorizing the Board of Supervisors of Contra Costa County to levy a special tax for that purpose, upon the condition, however, that the creditor should, before the 1st of August following, signify his acceptance of said amount so to be provided, in full satisfaction and payment of the demand growing out of the building of the bridge by said Gilman. (See Stats. 1860, p. 94.) Acceptance within the required time was made by plaintiff of the terms of said Act, and the outstanding warrant held by him as assignee was thereupon surrendered up, the tax was levied, the required amount was obtained thereby, and the sum of thirty-one thousand nine hundred and eleven dollars and twenty-one cents—a sum equal to said twenty thousand four hundred and twenty-seven dollars judgment with interest added at ten per cent per annum—paid over to plaintiff and received by him, for which his receipts were given to the proper county authorities, in full satisfaction of all demands accruing at any time in said Gilman's favor against the County of Contra Costa for building said bridge across the San Antonio Creek. The said judgment for

eighty-five thousand dollars, sued upon in this action, was recovered by plaintiff, as assignee of the Gilman judgment of March 22d, 1856, for twenty thousand four hundred and twenty-seven dollars, in an action instituted thereon for its revival, and there was entered up a new judgment thereon by default, by the Clerk, against the county, on the 18th day of July, 1860, for eighty-five thousand and forty-two dollars and eighty-six cents, principal and interest. Said revived judgment, by its terms, was made to draw interest at five per cent a month from and after the date of its rendition.

The defendant had judgment for costs in the Court below, and plaintiff appealed.

*S. Heydenfeldt,* for Appellant, argued:

That a given sum of indebtedness cannot be satisfied by the bare payment of a less sum, even if accepted in full payment by the creditor; and cited Broom's Legal Maxims; *Deland* v. *Hiett,* 27 Cal. 611. That the acceptance by the plaintiff of the provisions of the Act of March 14th, 1860, in full satisfaction of his demand for a much larger sum due him, than that Act provided should be paid, was a *nudum pactum.* That, by that Act, the Legislature did no more than make provision for payment of *a part* of a just demand due plaintiff, arising on a valid contract, the *whole* of which was then due. The obligation to make payment of the whole demand was as well founded in every consideration of justice and good faith as to the *part* for the payment of which provision was made. That by this Act the State did no more than proffer conditionally to partly perform a plain duty, viz: to pay plaintiff's whole demand, and this could not be construed into a consideration sufficient to sustain plaintiff's promise, as valid and binding, to accept such part payment in satisfaction of his whole demand.

*H. Mills, Thomas A. Brown,* and *Mark Shepard,* for Respondent.

The statute of 1855, pages nine to twelve, provides for funding all indebtedness of defendant accruing prior to 1855, and that such existing indebtedness *shall only be paid as in this Act provided.* The plaintiff refused or neglected to accept the benefit of said Act, and was therefore remediless—the law prohibiting payment except as provided in said Funding Act. (See *Hunsaker* v. *Borden,* 5 Cal. 288; Statutes 1855, p. 12, Sec. 13.) There was, then, no law authorizing the officers of the county to pay, save in the mode prescribed by the Funding Act above referred to. The complaint did not state facts constituting a cause of action, and defendant submits that the judgment entered by the Clerk for this reason was a nullity. (Practice Act, Sec. 45; *Abbe* v. *Marr,* 14 Cal. 211.)

The plaintiff, having no remedy for the enforcement of his said claim, applied to the Legislature for relief, which was granted upon the *terms* and *conditions* set forth in the Act, his claim being then as much barred from further enforcement as if fully paid. (See Statutes 1860, pp. 94, 95.) The defendant, without the action of the Legislature, could not pay the claim, or any part thereof, there being no authority to levy taxes save in the Legislature. It is settled beyond question, that the Legislature may impose taxes for any purpose they may choose, and it follows that, having such authority, the Legislature may do so upon such terms as to them may seem just. (*Contra Costa County* v. *Board of Supervisors of Alameda County,* and cases there cited, 26 Cal. 646.) The levy of taxes, by the Act of 1860, was made upon the terms stated in said Act—the *consideration* was the *settlement* of this claim. The Act of 1860 was a novation of the old for a new contract entered into, accepted, and fully performed. The new contract needed no consideration to support it, for the Legislature may make a consideration as well as terms. (*Van Maren* v. *Johnson,* 15 Cal. 308; Hittell's Digest, par. 599; 2 Cal. 99; *People* v. *Burr,* 13 Cal. 349; *Meyers* v. *English,* 9 Cal. 348.)

The plaintiff, by his acceptance of the amount mentioned

in the Act of 1860, and interest thereon at ten per cent per annum, clearly gave defendant to understand that his claim for five per cent per month was abandoned.  Defendant therefore insists that plaintiff is estopped from now setting up or claiming any demand for interest growing out of the original agreement.  (*Burnett* v. *Dickson*, 8 Cal. 115; *Mitchell* v. *Reed*, 9 Cal. 205; *McGee* v. *Stone*, 9 Cal. 606; Greenl. on Ev. 195, Sec. 27.)

It is contended by plaintiff that the amount paid, to wit: thirty-two thousand dollars, was received and applied under the law and acceptance of plaintiff, to the payment in part of the judgment of 1856 mentioned in the Act of 1860. We say, if this be true, then the only object of this suit is to recover the balance of the interest, which would be the difference between the interest designated in the law and acceptance at ten per cent per annum, and five per cent per month, designated in the contract.

The law of 1860, first section, fixed the application of the money raised and received thereunder, to be applied to the payment of—first, the judgment; second, the costs; and, third, interest at the rate of ten per cent per annum, from the date of the rendition of judgment, to wit: March 12th, 1856.  The balance, then, claimed to be now due, and sued for in this action, must be interest money, and defendant submits that an action for interest cannot be maintained. The plaintiff having accepted the principal of his debt, cannot afterwards sue for the interest.  (*Tillotson* v. *Preston*, 3 Johns., and cases therein cited.)

In view of the foregoing, defendant submits that the defense in this case may rely upon either payment and satisfaction, accord and satisfaction, release and discharge, compromise and satisfaction, or part payment as satisfaction in full.  (3 Blk. Com. p. 15, note 42; Story on Contracts, Sec. 982, and notes 1–6; 2 Parsons on Contracts, pars. 194–200, and notes; *Rose* v. *Hall*, 26 Conn. 392; *Cushing* v. *Wyman*, 44 Maine, 121; *Goodrich* v. *Stanley*, 24 Conn. 613; *Johnston*

37

v, *Brannan,* 5 Johns. 271 ; 2 Parsons on Contracts, pp. 129–132, and notes, and note *x,* p. 132 ; *Muliken* v. *Brown,* 1 Rawle, 391 ; *Harris* v. *Story,* 2 E. D. Smith, N. Y., 363 ; 1 Parsons on Contracts, pp. 164–70, and notes *n* and *z,* p. 364, and notes *o* and *p,* p. 369, and especially note *t,* p. 370, and authorities there cited ; *Richardson* v. *Cooper,* 25 Maine, 450 ; *Munroe* v. *Perkins,* 9 Pick. 304–5 ; 1 Parsons on Contracts, 373–76 ; 2 Parsons on Contracts, pp. 219–22, and notes.)

By the Court, SANDERSON, J. :

The law of contracts, as between private individuals, invoked by the learned counsel for the appellant, does not, as we consider, furnish the rule of decision in this case. Whether a given sum of indebtedness can be satisfied by the bare payment of a less sum, though received as payment in full by the creditor, or whether the remedies existing at the date of a given contract become a part of the contract, and cannot therefore be impaired by subsequent legislation, are questions which we do not find it necessary to discuss in this place.

In this case a sovereign is one of the contracting parties ; for the government of the County of Contra Costa is a portion of the State Government, and as against a sovereign there are no remedies except such as the sovereign, in the exercise of that good faith by which all Governments are presumed to be actuated, may accord. The State Government, neither in its general nor its local capacity, can be sued by her creditors or made amenable to judicial process except by her own consent. Her creditors must rely solely upon her good faith as to the time, mode, and measure of payment. (*Hunsaker* v. *Borden,* 5 Cal. 290 ; *McCauley* v. *Brooks,* 16 Cal. 34.)

At the time the contract was made between Gilman and the State, as represented in the local government of Contra

Costa County, no remedies in a judicial sense existed either against the State or county. Gilman entered into the contract with full knowledge that he had no security for its performance on the part of the county except the good faith of the Government. He knew that there was no mode by which the State or county could be coerced to pay through the action of the judicial department. He knew that the State or county could make payment only by the exercise of the sovereign power of taxation, and that there was no higher power by which the exercise of that power for his benefit could be coerced. The subsequent passage of the Act by which persons holding claims against counties were allowed to sue them, when such claims were rejected by the county government, did not at all improve the condition of Gilman or his assignee in this respect, nor add to the obligation of the State or county to pay his claim. A judgment, under that Act, against a county only had the effect of converting a disputed into an audited claim. (*Emeric* v. *Gilman*, 10 Cal. 404.) Beyond the entry of judgment the judiciary were not authorized to proceed, and hence in respect to payment, Gilman and his assignee had no higher claim after he obtained his judgment than before, and, as before, was still dependent upon the good faith of the State. His remedy—if remedy it may be called—still lay in the voluntary exercise of the taxing power by the State. In other words, the State, by reason of her sovereignty, still held control of the question of payment as to all its incidents of time, mode and measure. By the passage of the Funding Act of 1855 (Statutes 1855, p. 9,) the State made provision for the payment of the debts of Contra Costa County created prior to the 1st day of February of that year, to which class belonged the claim in suit. The Act was the exercise of legitimate and unquestionable power on the part of the Legislature. (*Hunsaker* v. *Borden, supra.*) As already shown, the State had the power to pay or not as she pleased, and of course to determine the time, mode and measure of payment. This she did by passing the Funding Act, and in

passing it she fully vindicated her good faith, and left all claimants for whom provision was made in that Act without any further claims upon her.   She provided that their claims should be met and satisfied in a particular way, and in no other.   While claimants were not compelled to fund, yet they were told that payment would be made in no other way.   In view of this language, claimants were bound to fund, or forego all further claims founded upon any supposed legal or moral obligation to pay them resting upon the State. If parties who failed to fund made any further claim for payment, they could not invoke the good faith of the State, but must rely entirely upon her generosity.   Whatever the State might do for them would be entirely *ex gratia*, and without the color of legal or moral obligation, for every duty, in that respect, cast upon the State, had been performed by the passage of the Funding Act.   By not funding and taking his pay in the mode provided in the Funding Act, Gilman forfeited all further claim upon the good faith of the State, and the subsequent passage of the Act of the 14th of March, 1860, (Statutes 1860, p. 94,) was in all respects *ex gratia*.   Instead of the State being obnoxious to the charge of bad faith, or an attempt to avoid full payment of a just claim, she is entitled to the doubtful praise of having provided for and paid a claim no longer supported by any foundation in equity or good conscience.   Instead of the acceptance of the sum offered by the State in that Act, in full satisfaction of the claim, being a *nudum pactum* on the part of the plaintiff, the offer was a *nudum pactum* on the part of the State, and the plaintiff, instead of being the victim of republican ingratitude, is an example of republican generosity.

Judgment affirmed.

Mr. Chief Justice Currey expressed no opinion.