[S. F. No. 7011.  In Bank.—January 8, 1915.]

WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY (a Corporation), Petitioner, v. JOHN S. CHAMBERS, as State Controller of the State of California, Respondent.

ACTION AGAINST STATE—JUDGMENT MERELY LIQUIDATES CLAIM—PAYMENT CANNOT BE ENFORCED BY JUDICIAL PROCESS.—A judgment against the state, in cases wherein the state has permitted actions to be maintained against it, merely liquidates and establishes the claim against the state, and, in the absence of an express statute so providing, such judgment cannot be collected by execution against the state or its property, or by any of the ordinary processes of law provided for the enforcement of judgments; it remains for the state,

after such judgment, to provide for the payment thereof in such manner as it sees fit, or to refuse to do so at its pleasure, and the judgment creditor can obtain payment in no other way than that provided.

ID.—TAXES ILLEGALLY ASSESSED BY STATE BOARD OF EQUALIZATION—JUDGMENT RECOVERED AGAINST TREASURER—PAYMENT BY TREASURER ON WARRANT OF CONTROLLER—CONSTITUTIONAL LAW—CONSTRUCTION OF SECTION 3669 POLITICAL CODE.—The provision of section 3669 of the Political Code, as amended in 1905, which directs that the state controller, in the event of a final judgment being recovered against the state treasurer for the amount of taxes illegally assessed by the state board of equalization and collected by the treasurer, must draw his warrant therefor upon the treasurer, who must pay the same to the judgment creditor, is in conflict with section 22 of article IV of the state constitution, providing that "no money shall be drawn from the treasury, but in consequence of appropriations made by law, and upon warrants duly drawn thereon by the controller," and also with section 34 of the same article, providing that "No bill making an appropriation of money, except the general appropriation bill, shall contain more than one item of appropriation, and that for one single and certain purpose, to be therein expressed."

ID.—TAXES PAID TO TREASURER BECOME PART OF GENERAL FUND—CANNOT BE PAID OUT EXCEPT ON WARRANT UNDER VALID APPROPRIATION. The money paid for taxes to the state treasurer, under section 3669 of the Political Code, is required to be paid into the treasury as other moneys are required to be paid, and thus go into and become a part of the general fund. It is not ear marked, but becomes a part of the mass and cannot be distinguished from any other money. It is subject to be paid out only when a warrant on the general fund is presented, under a valid appropriation.

ID.—GENERAL APPROPRIATION BILL—REPAYMENT OF TAXES ILLEGALLY COLLECTED MUST BE BY SPECIAL APPROPRIATION.—Section 29 of article IV of the constitution declares that the general appropriation bill shall contain no item or items of appropriation except for state salaries, and expenses of state government and state institutions; hence appropriations for claims for illegal taxes collected by the state treasurer cannot be embraced in the general appropriation bill. They must be paid out, if at all, by virtue of a specific appropriation. This means that the authority for such payment must be found in a bill containing only one item of appropriation, for one single and certain purpose therein expressed.

ID.—SECTION 3669 OF POLITICAL CODE NOT A SPECIFIC APPROPRIATION—PROVISIONS DIRECTING PAYMENT OF JUDGMENT FOR ILLEGAL TAXES ARE UNCONSTITUTIONAL.—The provisions of section 3669 of the Political Code, directing the state controller, in the event of a final judgment being recovered against the state treasurer for the amount of taxes illegally assessed by the state board of equalization and col-

lected by the treasurer, to draw his warrant therefor upon the treasurer, and directing the latter to pay the same to the judgment creditor, has been embodied in that section from the time of its original enactment in 1883. It cannot be construed into a specific appropriation bill of the kind described in section 34 of article IV of the constitution. If it has any force at all, therefore, instead of being a bill containing but one item of appropriation, and that for one single and certain purpose, it authorizes warrants for different items due to different persons for different years, embracing every final judgment that may have been rendered for such claims in any and every year since the last amendment of the section in 1905, or which may hereafter be rendered. The best that can be said of it in this regard is that it is a continuing general appropriation bill to authorize the payment of all future judgments for such claims out of the revenues of each succeeding year. It is a kind of legislation that is positively forbidden by sections 22 and 34 of article IV of the constitution, and is therefore void.

ID.—SUBDIVISION (G) OF SECTION 14 OF ARTICLE XIII OF CONSTITUTION CONSTRUED—SECTIONS 22 AND 34 OF ARTICLE IV NOT SUPERSEDED BY. Subdivision (g) of section 14 of article XIII of the constitution, adopted in November, 1910, which declares that after payment of any tax levied under the section, an "action may be maintained to *recover* any taxes illegally collected in such manner and at such time as may now or hereafter be provided by law," cannot be construed as a constitutional recognition, affirmance, or adoption of such provisions of section 3669 of the Political Code, and, in effect, a constitutional declaration that an action may be maintained for such taxes, and judgment recovered against the state therefor, and that such judgment when final shall be paid out of the treasury on warrant drawn thereon by the controller. That subdivision does not supersede or override sections 22 and 34 of article IV of the constitution in so far as they involve limitations upon the appropriations of money to satisfy final judgments against the state for taxes illegally collected by the state treasurer.

ID.—STATUTES PERMITTING STATES TO BE SUED ARE STRICTLY CONSTRUED. It is a rule of statutory construction that public rights will not be treated as relinquished or conveyed away by inference or legal construction. In pursuance of this rule statutes permitting the state to be sued are held in derogation of its sovereignty and will be strictly construed.

ID.—MEANING OF WORD "RECOVER"—DOES NOT INCLUDE ACTUAL PAYMENT.—The word "recover," when used in connection with actions at law for money, does not necessarily, or even ordinarily, include the actual payment of the money sued for. Ordinarily the word does not include more than the recovery of judgment for the money. As used in subdivision (g) of section 14 of article XIII of the con-

stitution, and in section 3669 of the Political Code, actual payment of the money is not included in its meaning.

ID.—MEANING OF PHRASE "MAY MAINTAIN AN ACTION TO RECOVER"— ACTION IS COMPLETE WHEN JUDGMENT BECOMES FINAL.—The declaration in subdivision (g) of section 14 of article XIII of the constitution, that the taxpayer "may maintain an action to recover" the taxes illegally collected, is not a declaration that such taxes shall be repaid to him. The presentation of the certified copy of the judgment to the controller, and the issuance of the warrant thereon by him, as provided for in section 3669 of the Political Code, are not parts of the proceedings in the actions authorized by that section. The action is complete when the judgment becomes final. Likewise, the action authorized by subdivision (g) would be complete when final judgment was obtained, and there is nothing in that subdivision that can be understood as a declaration concerning the manner of satisfaction of the judgment when recovered.

ID.—SECTIONS 3664 TO 3670 OF POLITICAL CODE APPLICABLE ONLY TO TAXES COLLECTED UNDER OLD SYSTEM OF RAILROAD TAXATION—RECOVERY OF TAXES COLLECTED UNDER CONSTITUTIONAL AMENDMENT OF 1910 CONTROLLED BY ACT OF APRIL 1, 1911.—Upon a consideration of the history of the legislation which culminated in the enactment of section 3669 of the Political Code in 1883, it is held, that the provisions of section 3664 to 3670, inclusive, of that code were intended to apply and do apply exclusively to taxes therein provided for under the old system of railroad taxation which became operative upon the adoption of the constitution of 1879, and that the provisions of the act of April 1, 1911 (Stats. 1911, p. 530), enacted to carry into effect the provisions of section 14 of article XIII of the constitution, as the same was amended in November, 1910, providing for the taxation of public service and other corporations for the benefit of the state, were intended to and do apply exclusively to taxes levied and collected under that constitutional amendment of 1910, and that the latter act covers the entire legislation applicable to the recovery of such taxes by action.

APPLICATION for a Writ of Mandate directed to the State Controller of the State of California.

The facts are stated in the opinion of the court.

J. C. Campbell, Weaver, Shelton & Levy, and Edward F. Treadwell, as *Amicus Curiae*, for Petitioner.

U. S. Webb, Attorney-General, and Raymond Benjamin, Chief Deputy Attorney-General, for Respondent.

SHAW, J.—*Mandamus* to compel the state controller to issue a warrant in favor of the plaintiff on the state treasury for the amount of a judgment recovered by the plaintiff against the state of California in an action to recover state taxes illegally collected.

The plaintiff was a foreign corporation doing business in this state. Subdivision (d) of section 14 of article XIII of the constitution, provides that the franchises of all corporations, other than those engaged in certain public service, insurance or banking, shall be valued, in a manner to be provided by statute, and taxed at the rate of one *per centum* each year on such value. This section was added to article XIII by an amendment adopted in November, 1910. Section 14 of the act of 1911, passed to carry out this provision (Stats. 1911, p. 530), prescribes the method of valuation. Under these laws, the plaintiff was regularly taxed in the sum of two thousand seven hundred dollars as one *per centum* of the value of its franchise to do business in this state. This business consisted entirely of interstate commerce. For this reason it claimed exemption from this tax, and upon that claim it paid the tax under protest and thereupon brought suit to recover the amount paid and obtained the judgment in question. This judgment has become final. With its merits we have nothing to do, our concern in this proceeding being wholly upon the question of the mode of obtaining payment from the state.

The general rule is well established that a judgment against the state, in cases wherein the state has permitted actions to be maintained against it, merely liquidates and establishes the claim against the state, and that, in the absence of an express statute so providing, such judgment cannot be collected by execution against the state or its property, or by any of the ordinary processes of law provided for the enforcement of judgments; it remains for the state, after such judgment, to provide for the payment thereof in such manner as it sees fit, or to refuse to do so at its pleasure, and the judgment creditor can obtain payment in no other way than that provided. (*Sharp* v. *Contra Costa Co.*, 34 Cal. 291; *Smith* v. *Broderick*, 107 Cal. 650, [48 Am. St. Rep. 167, 40 Pac. 1033]; *Gilman* v. *Contra Costa Co.*, 8 Cal. 57, [68 Am. Dec. 290 and note, p. 297]; *Emeric* v. *Gilman*, 10 Cal. 404, 410, [70 Am.

Dec. 742] ; *People* v. *San Joaquin etc. Assoc.*, 151 Cal. 806, [91 Pac. 740].)

The petitioner claims that a provision for the payment of this judgment and for the issuance of the warrant therefor is made by section 3669 of the Political Code as amended in 1905, [Stats. 1905, p. 823]. The material parts of the section are as follows:

"Each corporation, person or association assessed by the state board of equalization must pay to the state treasurer, upon the order of the controller, as other moneys are required to be paid into the treasury, the state and county and city and county taxes each year levied upon the property so assessed to it or him by said board. Any corporation, person or association dissatisfied with the assessment made by the board, upon the payment of the taxes due upon the assessment complained of, . . . and the filing of notice with the controller of an intention to begin an action, may . . . bring an action against the state treasurer for the recovery of the amount of taxes and percentage so paid to the treasurer, or any part thereof. . . . When any person, corporation or association has made payment of any of the taxes . . . herein referred to, which have been subsequently adjudged illegal, and still remain in the hands of the state treasurer such person, corporation or association shall be entitled to a refund thereof, although the payment of such taxes . . . may not have been under protest, nor a notice filed with the controller, . . . as hereinbefore provided. And in case of failure or refusal by the state treasurer to pay the same to such person, corporation or association upon its demand, an action may be brought against the state treasurer for the recovery of the amount of taxes and percentage so paid to the treasurer or any part thereof. . . . *If the final judgment be against the treasurer, upon presentation of a certified copy of such judgment to the controller he shall draw his warrant upon the state treasurer, who must pay to the plaintiff the amount of the taxes so declared to have been illegally collected;* and the cost of such action, audited by the board of examiners, must be paid out of any money in the general fund of the treasury, which is hereby appropriated and the controller may demand and receive from the county or city and county interested, the proportion of such costs."

We have italicized the particular clause which, it is claimed, authorizes the issuance of the warrant to the plaintiff. If this clause is valid, and is applicable to the taxes in question, the warrant should be issued as prayed for. We have reached the conclusion that the clause is both invalid and inapplicable. We proceed to state the reasons.

This provision for the payment of money out of the state treasury is contrary to the specific mandates of the constitution. Section 22 of article IV, provides that ''No money shall be drawn from the treasury but in consequence of appropriations made by law, and upon warrants duly drawn thereon by the controller.'' Section 34 of the same article is as follows: ''No bill making an appropriation of money, except the general appropriation bill, shall contain more than one item of appropriation, and that for one single and certain purpose, to be therein expressed.'' Section 3669 opens with the statement that the person assessed must pay the taxes each year levied upon the property assessed to it, to the state treasurer, ''as other moneys are required to be paid into the treasury.'' The suit to be brought for the recovery of taxes illegally collected cannot be begun until after the taxes in controversy have been thus paid into the treasury ''as other moneys'' are paid in. There is no provision of law appropriating such money to any special fund or requiring it to be kept in a separate account; hence it would go into and be a part of the general fund. (Pol. Code, sec. 454.) It would be out of this fund that the money must come to pay the warrant of the controller issued to satisfy the judgment in the action when it became final. Money thus paid into the treasury is not ear marked; it becomes a part of the mass and cannot be distinguished from any other money. It is all subject to payment out of the treasury whenever a warrant on the general fund is presented, under a valid appropriation. There can be no doubt, therefore, that the money to be paid out under the italicized clause of section 3669 above quoted, is money in the state treasury, or that in order to get it out it must be taken from the state treasury. This brings it within the prohibition of section 22 of the constitution aforesaid; it cannot be drawn out ''but in consequence of appropriations made by law,'' and upon the warrant of the controller, duly drawn. Section 29 of the same article declares that the general appropriation bill shall contain no item or

items of appropriation except for state salaries, and expenses of state government and state institutions; hence appropriations for these claims could not be embraced in the general appropriation bill. They must be paid out, if at all, by virtue of a specific appropriation. This means that the authority for such payment must be found in a bill containing only one item of appropriation, for one single and certain purpose therein expressed.

By no stretch of construction can this paragraph of section 3669 be transformed into a specific appropriation bill of the kind described in section 34 of article IV of the constitution. This section was first enacted in 1883. It was amended in 1891 and again in 1905. This particular paragraph has been included in it from the beginning. If it has any force at all, therefore, instead of being a bill containing but one item of appropriation and that for one single and certain purpose, it authorizes warrants for different items due to different persons for different years, embracing every final judgment that may have been rendered for such claims in any and every year since the last amendment of the section in 1905, or which may hereafter be rendered. The best that can be said of it in this regard is that it is a general appropriation bill to authorize the payment of all future judgments for such claims. It does not contain but one item of appropriation; it embraces as many items as there may be persons having such claims and obtaining final judgments therefor. These separate claims are not itemized at all. And no specific amount is stated. It has no resemblance to a specific appropriation. It is not payable out of revenues of a specified year; it is a continuing general appropriation of the revenues of each succeeding year, as such claims may arise and are converted into final judgments. It is a kind of legislation that is positively forbidden by the sections of the constitution above quoted, and it is therefore void.

It is urged that the same objections will apply to the validity of sections 3804 and 3819 of the Political Code, so far as they provide for the refunding by the state of state taxes illegally collected. It is to be observed that these sections do not provide for payments of money out of the state treasury, but only allow deductions to be made from collections of taxes that would otherwise be paid into the state treasury. Whether this distinction will place these provisions without

the scope of sections 22 and 34 of the constitution, or not, is a question upon which we express no opinion. The enactment of these sections can have no proper bearing upon the meaning and effect of the prohibitions in the constitution concerning payments from the state treasury.

It is claimed, however, that this provision of section 3669 is referred to and practically incorporated into the constitution itself by subdivision (g) of the aforesaid section 14 of article XIII. This subdivision, after declaring that no injunction shall ever issue against the collection of any tax levied under the section, proceeds as follows: "But after payment action may be maintained to recover any taxes illegally collected in such manner and at such time as may now or hereafter be provided by law." The argument is that this authorizes an action "to *recover*" taxes illegally collected under color of the constitutional scheme, that to "recover" a sum of money due is to obtain payment thereof and, consequently, that this is an express recognition, affirmance, and adoption of the provision of section 3669 and, in effect, a constitutional declaration that an action may be maintained for such taxes, and judgment recovered against the state therefor, and that such judgment when final, shall be paid out of the treasury on warrant drawn thereon by the controller. If this is the meaning of subdivision (g), it supersedes and overrides sections 22 and 34 of article IV in so far as they involve appropriations of money to satisfy final judgments against the state for taxes illegally collected by the state treasurer, and, to that extent, takes from the state its sovereign power to control payments of money from the state treasury.

It is a rule of statutory construction that public rights will not be treated as relinquished or conveyed away by inference or legal construction. (2 Sutherland on Statutory Construction, sec. 568; *Mayrhofer* v. *State,* 89 Cal. 110, [23 Am. St. Rep. 451, 26 Pac. 646]; *Ruperich* v. *Baehr,* 142 Cal. 193, [75 Pac. 782], and cases first above cited.) In pursuance of this rule it has been held that statutes permitting the state to be sued are in derogation of its sovereignty and will be strictly construed. (*Raymond* v. *State,* 54 Miss. 562, [28 Am. Rep. 382].) These rules are applicable to the present case.

The word "recover," when used in connection with actions at law for money, does not necessarily, or even ordinarily,

include the actual payment of the money sued for. The Century Dictionary defines its meaning as a law term as follows: "To recover damages for a wrong, or for a breach of contract. It does not necessarily imply the actual gain of satisfaction or possession, but ordinarily only the obtaining of judgment therefor." It is true that in some connections it has been given a broader significance. For example, in *Leslie* v. *York*, 112 Ky. 712, [66 S. W. 751], it was held that in a contract by a litigant to pay his attorneys "one-half they may recover," it meant the actual receipt of the money sued for. But the opinion states that ordinarily the word did not include more than the recovery of judgment for the money. In ordinary usage the phrase "action may be maintained to recover any tax illegally collected," as used in subdivision (g), would not be understood to refer to or include a mode or means of obtaining satisfaction of the judgment to be rendered in such action, or the actual receipt of the money sued for. It was not so used in section 3669. The declaration of that section that "an action may be brought against the state treasurer for the recovery of the amount of taxes," if this were the meaning of the word "recover," would have included the actual payment of the money by the state treasurer and the additional provision for a warrant by the controller would have been unnecessary. The rule of strict construction therefore does not warrant the meaning which the plaintiff here desires to have attributed to the word "recover."

Furthermore, the subdivision itself does not declare that the taxes illegally collected shall be repaid to the taxpayer. Its declaration is that he may maintain an action to recover them. The maintenance of an action to recover money is not ordinarily understood to include the collection of the money after judgment. The presentation of the certified copy of the judgment to the controller, and the issuance of the warrant thereon by him, as provided for in section 3669, were not parts of the proceedings in the action authorized by that section. The action was complete when the judgment became final. Likewise, the action authorized by subdivision (g) would be complete when final judgment was obtained and there is nothing in that subdivision that can be understood as a declaration concerning the manner of satisfaction of the judgment when recovered. Our conclusion is that

subdivision (g) does not continue in force or incorporate the provision of section 3669 for the payment of the money out of the state treasury after final judgment.

Upon a consideration of the history of the legislation which culminated in the enactment of section 3669, we are of the opinion that the provision here invoked has no application to the payment of taxes collected under section 14 of article XIII of the constitution. Prior to the adoption of the constitution of 1879 railroad taxes were assessed and collected in each county by the county authorities. That constitution made a radical change in the manner of collection with respect to railroads operated in more than one county. It provided that the operative property of such railroads should be assessed by the state board of equalization and apportioned to the respective counties in proportion to mileage. (Art. XIII, sec. 10.) In 1880 an act was passed adding sections 3664 and 3665 to the Political Code to carry out this provision of the constitution. The scheme thus provided was not complete and in 1883 another statute was passed amending sections 3664 and 3665 and adding new sections from 3666 to 3670, inclusive, embracing substantially the scheme in force at the time the constitutional amendment of 1910 was adopted. Some of these sections were subsequently amended, the last amendment of 3669 being in 1905. This entire statutory provision was enacted to provide for the assessment and collection of railroad taxes in pursuance of the constitutional provision requiring the same to be assessed by the state board of equalization. Section 3666 required the state board to prepare a record of the railway assessments and of the apportionment thereof to the counties and that the same should be transmitted to the state controller. The controller was required to enter the amount of the state and local taxes due upon the whole assessment from each railroad company assessed. Section 3668 specified the time when such taxes should be deemed delinquent and the penalties to be thereupon imposed, and provided further that the state's portion of the taxes collected by the state treasurer should be distributed by the treasurer to the funds entitled thereto and that the portion of each county should be reported to the officers thereof. It was this tax so to be assessed to which the provisions of section 3669 requiring it to be paid to the state treasurer applies. The opening sentence of that sec-

tion does not in terms specify that it refers to the railroad taxes assessed under the immediately preceding provisions of the code, but when taken in connection with those provisions and the subject of the act as originally enacted and subsequently amended, it is clear that it can mean no other tax than the railroad tax therein authorized to be assessed and collected. It is not, therefore, a general continuing provision made for the purpose of applying to any state tax which might thereafter by any subsequent scheme be imposed upon taxpayers. By the amendment to the constitution in 1910 providing for a percentage tax upon corporation earnings or capital as a means of raising state revenues an entirely distinct and different scheme was enacted. The old provision for the valuation and assessment of all operative railroad property by the state board of equalization was entirely superseded. The provisions of the law relating to that scheme were by their terms necessarily inapplicable to the new scheme. These provisions of the code related to the assessment of property and the imposition of a tax according to the valuation thereof. The new constitutional scheme provided for no valuation of property except franchises. It included all public service corporations as well as banking and insurance corporations. In order to supplement this constitutional provision a new act was necessary. To meet this exigency the legislature passed the aforesaid act of April 1, 1911 (Stats. 1911, p. 530), entitled "An act to carry into effect the provisions of section 14 of article XIII, of the constitution of the state of California as said constitution was amended November 8, 1910, providing for the separation of state from local taxation, and providing for the taxation of public service and other corporations, banks and insurance companies for the benefit of the state, all relating to revenue and taxation." This act embraces an elaborate scheme covering every detail of the proceedings deemed necessary to carry out the constitutional provision referred to. Section 23 of the act covers the same subject-matter, with respect to the taxes levied under the new constitutional plan of taxation, as that covered by section 3669 of the Political Code with respect to taxes collected under the old system of railroad taxation superseded by the amendment of 1910. It provides for payment under protest and an action against the state treasurer for the recovery thereof if the taxes are illegally collected, but it omits

any provision for warrants by the controller or payment of the judgment out of the state treasury. The only reasonable conclusion from this legislative history is that the provisions of sections 3664 to 3670, inclusive, of the Political Code were intended to apply and do apply exclusively to taxes therein provided for under the old system of railroad taxation, and that the provisions of the act of April 1, 1911, aforesaid, were intended to and do apply exclusively to taxes levied and collected under the constitutional amendment of 1910 and that the latter act covers the entire legislation applicable to the recovery of such taxes by action. The provisions of the Political Code are therefore inapplicable to taxes levied under the constitution as supplemented by the act of 1911.

For these reasons we are of the opinion that the plaintiff is not entitled to the warrant which he here seeks. The petition for a writ of *mandamus* is denied.

Sloss, J., Lorigan, J., Melvin, J., Henshaw, J., and Angellotti, C. J., concurred.