**NEVADA–CALIFORNIA ELECTRIC COR-PORATION v. CORBETT et al.**

No. 4236.

District Court, N. D. California.

April 1, 1938.

952

Henry W. Coil, H. M. Hammack, D. L. King, and C. N. Perkins, all of Riverside, Cal., for plaintiff.

U. S. Webb, Atty. Gen., and H. H. Linney and James J. Arditto, Deputies Atty. Gen., for defendants.

Before DENMAN, Circuit Judge, and ST. SURE and ROCHE, District Judges.

DENMAN, Circuit Judge.

Plaintiff, Nevada-California Electric Corporation, a corporation of Delaware, brings this suit against the defendants, members of the State Board of Equalization of the state of California, and the Attorney General of the state of California, to enjoin enforcement against plaintiff of the California Use Tax Act of 1935, as amended. St.Cal.1935, c. 361, p. 1297; St. 1937, pp. 1327, 1874, 1935.

Federal jurisdiction is sought under section 24 of the Judicial Code, as amended, 28 U.S.C.A. § 41, on the ground that the acts threatened by defendants will unduly burden plaintiff's interstate commerce business contrary to the provisions of clause 3, section 8, article 1 of the Federal Constitution.

The bill alleges that plaintiff performs, in the state of California, the business of transmitting, in intrastate and interstate commerce, electrical energy; that for the purpose of carrying on this inextricably interwoven interstate and intrastate transmission, plaintiff purchases essential instruments and materials from points outside of California, transports them into the state and subsequently installs them in its existing plant or keeps them on hand as necessary standby material. The allegations of the complaint as to the purchase of this property and its subsequent use and disposition within the state are similar to those in Southern Pacific Company v. Corbett, D.C., 20 F.Supp. 940.

It is alleged that unless restrained the defendants will immediately levy against plaintiff, and collect from it, a tax upon the use of the described property in excess of $4,500; and will, unless restrained, collect about $1,500 per year for the use of like property to be purchased in the future. It is claimed that the enforcement of the provisions of the statute, St.Cal.1935, p. 1298, § 3, as amended by St.1937, p. 1937, imposing an excise tax "on the storage, use or other consumption * * * of tangible personal property" on the materials described in the complaint, as devoted from the time of their purchase to both interstate and intrastate commerce, would be a direct and unconstitutional burden on plaintiff's interstate business.

The bill asks temporary and permanent injunctions against the threatened enforcement of the statute. A temporary restraining order is now in effect.

The defendants have moved to dismiss the bill on the ground that there exists for the plaintiff in the courts of California a plain, speedy, and efficient remedy for any damage it may suffer by reason of illegal exactions on the part of defendants. The motion to dismiss relies upon the amendment to section 24(1) of the Judicial Code of August 21, 1937, 50 Stat. 738, 28 U.S.C.A. § 41(1), which reads:

"Notwithstanding the foregoing provisions of this paragraph, no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such state."

Plaintiff concedes that the California Use Tax Act, St.1935, p. 1297, as amended, grants the taxpayer a remedy by way of

an action at law to recover taxes illegally collected. It concedes that as a condition of obtaining equitable relief from this court it must affirmatively show that the statutory action provided is not plain, speedy, and efficient. It contends that the Use Tax Act on its face shows that the remedy provided a taxpayer is neither plain, speedy, nor efficient.

In order adequately to evaluate this assertion, we review briefly the assailed statute with particular reference to its collection and refund provisions.

As before stated, the 3 per cent. excise is levied upon the storage, use, or other consumption of tangible personal property in the state of California. Exempted, however, is the use of property upon which the 3 per cent. California Retail Sales Tax Act, St.1933, p. 2599, as amended, has been paid. The two excises are designed to be complementary.

The act sets out alternative collection procedures. If the property subject to tax is purchased from a retailer maintaining a place of business within the state (or otherwise licensed by the Board of Equalization to collect the tax), the retailer is required to collect the amount of the tax from the purchaser, giving him a receipt therefor. Section 6, St.1935, p. 1300, as amended by St.1937, p. 1938.

Consumers who have not paid the tax to a retailer maintaining a place of business within the state are required to pay the tax directly to the State Board of Equalization, section 7, St.1935, p. 1300, as amended by St.1937, p. 1938. The plaintiff in this case purchases a portion of its property from retailers who maintain places of business within California and a portion from concerns which do not. Hence it is required to make payments in both manners described above.

Where the tax is paid by the consumer to the retailer, the taxpayer is under no necessity of making returns and the amount is paid from time to time as purchases are made. Payment to the retailer exonerates the consumer from further liability, section 3 of the act, St.1935, p. 1298, as amended by St.1937, p. 1937, providing:

"Every person storing, using or otherwise consuming in this State tangible personal property purchased from a retailer shall be liable for the tax imposed by this act, and the liability shall not be extinguished until the tax has been paid to this State; provided however, that a receipt from a retailer maintaining a place of business in this State * * * shall be sufficient to relieve the purchaser from further liability for the tax to which such receipt may refer."

The consumer who pays the state directly is required four times a year to make a return to the State Board of Equalization. The return and payment are due within fifteen days from the close of each quarter, section 7.

We now come to the legal remedy afforded taxpayers for illegal collections. Section 25 provides:

"No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action or proceeding in any court against this State or against any officer thereof to prevent or enjoin under this act the collection of any tax or any amount of tax herein required to be collected; but after payment of any such tax or any such amount of tax herein required to be collected under protest, duly verified and setting forth the grounds of objection to the legality thereof, the retailer or person making the payment may bring an action against the State Treasurer in a court of competent jurisdiction in the county of Sacramento for the recovery of the amount paid under protest. No such action may be instituted more than one year after the tax or the amount herein required to be collected and paid to the State becomes due and payable, and failure to bring suit within said one year shall constitute waiver of any and all demands against the State on account of alleged overpayments hereunder. No grounds of illegality shall be considered by the court other than those set forth in the protest filed at the time of the payment of the tax or the amount herein required to be collected and paid to the State.

"If in any such action judgment is rendered for the plaintiff, the amount of the judgment shall first be credited on any taxes or amounts due from the plaintiff under this act, and the balance of the judgment shall be refunded to the plaintiff. In any such judgment, interest shall be allowed at the rate of six percent per annum upon the amount found to have been illegally collected from the date of payment of such amount to the date of allowance of credit on account of such judgment or to a date preceding the date of the refund warrant by not more than thirty days, such date to be determined by the board.

954

"In no case shall any judgment be rendered in favor of the plaintiff in any action brought against the State Treasurer to recover any amount paid hereunder, when such action is brought by or in the name of an assignee of the retailer or other person paying said amount, or by any person other than the person who has paid such amount." St.1937, p. 1945, operative July 1, 1937.

We hold that the remedy thus provided by the act itself to recover back taxes illegally exacted is plain, speedy, and efficient within the meaning of the Judicial Code amendment, supra. It will be seen, as we consider them in their order, that none of plaintiff's objections to this remedy has weight.

■ (1) The first objection is that the collection procedure outlined in the statute is so complicated and uncertain that it is doubtful whether a taxpayer could preserve his right to sue for refund. Plaintiff refers here to the fact that the taxpayer must on some occasions pay the tax to a retailer instead of directly to the Board of Equalization. It is claimed that section 25, St.1935, p. 1309, as amended by St.1937, p. 1945, does not authorize a suit by the taxpayer for refund of taxes which he has paid to a retailer.

We think section 25 by its plain terms permits a suit for the recovery of taxes paid either to a retailer or to the Board when it states, "the retailer *or person making the payment* may bring an action against the State Treasurer." Italics supplied.

But, it is argued, section 25 requires as a condition of suit for refund a payment "under protest, duly verified and setting forth the grounds of objection to the legality thereof." Plaintiff is seriously disturbed over the question of how to make protest when it purchases property from a retailer having a place of business in California and hence is required to pay the tax to such retailer. Should the protest be made to the retailer or to the Board? Or should the consumer leave with the retailer a protest to be transmitted to the Board?

We agree with plaintiff that the act could have been more definite in this respect, but we do not conceive that the lack is so serious as to warrant equitable relief. On those occasions when plaintiff pays the tax to the retailer, it can, without question, preserve its right to sue by filing duplicate protests with the retailer and with the Board of Equalization.

■ (2) Plaintiff next contends that section 25 deprives the taxpayer of adequate interest upon a victorious suit for refund, inasmuch as interest is allowed from the date of payment "to a date preceding the date of the refund warrant by not more than thirty days, such date to be determined by the board."

It is argued that the possibility of a denial of interest for a thirty-day period makes the legal remedy in this case inadequate. We do not so consider it. The thirty-day provision, far from cutting down the taxpayer's right, insures that he will not be prejudiced by an unduly long-time interval between judgment against the Treasurer and the drawing and approval of the warrant for the amount recovered. The necessities of calculation are such that a check or a warrant including interest on a principal sum never carries interest to the moment the instrument changes hands. The bare possibility that the necessary time lag might extend to thirty days, if an injury at all, is one so negligible that it falls within the principle de minimis non curat lex.

Furthermore, under Ogden v. Saunders, 12 Wheat. 213, 269, 6 L.Ed. 606, we are required to indulge every presumption in favor of the validity of the assailed legislation. One such presumption is that the state has allowed 6 per cent. interest, when it could have provided a less generous rate, for the purpose of compensating taxpayer for this thirty-day noninterest period.

■ (3) It is asserted that the remedy provided by the statute will entail a multiplicity of suits or claims on the part of plaintiff. The act provides suit for refund may be brought at any time within one year from the date the tax becomes due and payable. It would seem that, as to the question of the invalidity of the law, and hence applying to all payments, the plaintiff, within three years at the outside, by prosecuting its remedy vigorously, will have obtained a decision by the Superior Court of Sacramento county, and (if the decision is adverse) will have obtained rulings on appeal, both from the Supreme Court of California and the Supreme Court of the United States. A remote possibility of being forced to commence three such actions at law before final decision is reached on the issue litigated is not such multiplicity as will give jurisdiction to a court of equity.

If the question in dispute be the amount of the tax levied on various claimed purchases, these, for any period of a year or

less, under the California proceeding may be joined in one suit. Each of these cases is for a different cause of action and nothing would be gained by suing at equity rather than at law, if the action provided by the statute be deemed only to involve law instead of equity.

(4) Plaintiff urges as a ground for equity relief that the legal remedy will entail multitudinous and involved accounting transactions which a court of equity is better equipped to handle than is a court of law. If such a principle ever applies, it has no relevancy here. The accounting to be done in segregating the property as to amount and value between the portion claimed to be free from tax and the remainder, entails the same task either here or in the state court. The actual computations have nothing to do with the constitutional question which is clearly within the scope of an action at law.

(5) Lastly, plaintiff argues that if it prosecutes a suit for refund under section 25 and obtains a judgment in its favor, there is no certainty that the judgment will be paid.

Section 25, supra, provides in part that "If in any such action judgment is rendered for the plaintiff, the amount of the judgment shall first be credited on any taxes or amounts due from the plaintiff under this act, and the balance of the judgment shall be refunded to the plaintiff."

It is claimed that the State Controller may not, under this provision, draw a warrant upon the Treasury for the amount of the judgment, unless the state Legislature enacts a specific appropriation bill authorizing such payment to the victorious taxpayer.

The argument is based on section 22 of article 4 of the Constitution of California:

"No money shall be drawn from the treasury but in consequence of appropriation made by law, and upon warrants duly drawn thereon by the Controller."

And on section 34 of article 4:

"No bill making an appropriation of money, except the budget bill, shall contain more than one item of appropriation, and that for one single and certain purpose to be therein expressed."

In Westinghouse Electric Co. v. Chambers, 169 Cal. 131, 136, 137, 145 P. 1025, the Supreme Court had before it a former section of the Political Code, § 3669, as amended by St.Cal.1905, p. 823, which authorized suits for refund against the State Treasurer for any taxes which had been illegally collected. The statute provided that "If the final judgment be against the treasurer, upon presentation of a certified copy of such judgment to the controller he shall draw his warrant upon the state treasurer, who must pay to the plaintiff the amount of the taxes so declared to have been illegally collected."

The court held this provision invalid because in violation of the constitutional provisions quoted above; because it was not an appropriation bill and, if it assumed to be such, it contained more than one item— as many items as there might be refunds. But in so ruling, the court indicated the exception into which the present case falls:

"The suit to be brought for the recovery of taxes illegally collected cannot be begun until after the taxes * * * have been paid into the treasury. * * * There is no provision of law appropriating such money to any special fund or requiring it to be kept in a separate account; hence it would go into and be a part of the general fund. * * * It would be out of this fund that the money must come to pay the warrant of the controller. * * * Money thus paid into the treasury is not earmarked; it becomes a part of the mass and cannot be distinguished from any other money." Westinghouse Co. v. Chambers, 169 Cal. 131, 137, 145 P. 1025, 1027.

Refunds paid under section 25 of the Use Tax Act are not paid out of the general fund. On the contrary, the money is earmarked and set aside as a special fund, which fund in itself constitutes an appropriation "for one single and certain purpose." Section 23 of the Use Tax Act, St. 1935, p. 1308, as amended by St.1937, p. 1944, provides:

"All fees, taxes, interest and penalties imposed and all amounts of tax herein required to be paid to the State under this act must be paid to the board in the form of remittances payable to the State Board of Equalization of the State of California, and said board shall transmit such payments to the State Treasurer to be deposited in the State treasury to the credit of the retail sales tax fund. The moneys paid under this act and deposited in the retail sales tax fund shall, upon order of the State Controller, be drawn therefrom for the purpose of making refunds hereunder or be transferred to the general fund of the State."

The legislation in effect sets up an earmarked fund *within the retail sales tax fund,*

and enacts that this earmarked fund, made up of the total receipts under the use tax, is appropriated to the payment of refunds. The balance remaining, after the appropriation is carried out, is transferred to the general fund of the state. This transfer, of course, is not an appropriation.

Nevertheless, plaintiff argues, an appropriation for the general purposes of making refunds has not "one single and certain purpose * * * expressed," and does contain "more than one item of appropriation." It argues that there are as many items of appropriation as there are refunds.

The argument overlooks the principle indicated in the Westinghouse Case, supra, and well settled in California, that where a special fund is set apart from the general treasury for a particular purpose, the purpose specified and not each item of expenditure is the "one item of appropriation" which the Constitution requires. Board of Fish and Game Com'rs v. Riley, 194 Cal. 37, 39, 227 P. 775; Daughterty v. Riley, 1 Cal.2d 298, 305, 34 P.2d 1005, 1008, wherein a provision that "All moneys which shall be * * * credited to the 'corporation commission fund' are hereby appropriated to be used by the commissioner in carrying out the provisions of this act" was held valid "as a continuing appropriation for the support and maintenance of the corporation commissioner's department." Gillum v. Johnson, 7 Cal.2d 744, 758, 62 P.2d 1037, 63 P.2d 810, 108 A.L.R. 595; Ryan v. Riley, 65 Cal.App. 181, 189, 223 P. 1027. This last-cited case ably discusses the difference between the appropriation of an earmarked fund for a particular purpose and the appropriation of unlimited and undefined moneys out of the general treasury.

The fact that the funds discussed in these cases were collected and disbursed for regulatory purposes under the state police power, whereas the use tax is designed to raise money for general revenue purposes can have no bearing on the application of the quoted constitutional provisions to the payment of moneys out of the treasury.

The completeness and efficiency of the remedy provided by section 25 of the statute makes it unnecessary for us to consider other possible remedies afforded by the state.

On the facts stated in the bill of complaint we hold that plaintiff has a plain, speedy, and efficient remedy at law in the courts of California. This court, therefore, has no jurisdiction of the present suit.

The restraining order is dissolved and the bill dismissed.